THE CITY OF CHICAGO, Appellant, *vs.* D. R. HURFORD *et al.* Appellees.

*Opinion filed February 19, 1909.*

1. SPECIAL ASSESSMENTS—*unauthorized vouchers abating assessment should be deducted from cost of an improvement.* In determining whether a deficiency exists justifying a supplemental assessment, unauthorized vouchers for abatement of the special assessment as to certain property against which the assessment was regularly confirmed should be deducted from the cost of the improvement.

2. SAME—*when interest ceases on vouchers issued to contractors.* The interest upon vouchers issued to contractors against a special assessment ceases when money legally applicable to the payment of such vouchers is collected by the city.

APPEAL from the County Court of Cook county; the Hon. W. L. POND, Judge, presiding.

GEORGE A. MASON, and FRANK JOHNSTON, JR., (EDWARD J. BRUNDAGE, Corporation Counsel, of counsel,) for appellant.

JOSEPH H. FITCH, R. W. PENDARVIS, WILLIAM J. DONLIN, and GEORGE W. WILBUR, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

On May 13, 1907, the city council of the city of Chicago passed an ordinance for a supplemental assessment to pay the deficiency in the cost of construction of a system of main sewers in Forty-fifth avenue, West Twelfth street, Forty-eighth avenue, Grand avenue and Fullerton avenue, in accordance with a previous ordinance passed in 1895. Appellees filed objections to the assessment roll, which were sustained, and the city has appealed.

Appellees' principal contention was and is, that there was no deficiency to form a basis for the supplemental assessment. The original estimate of cost under the first ordinance was $632,500, but on the application for confirmation such reductions were made that the final order of confirmation entered in 1896 was for $533,017.65. The contract price for the improvement does not appear in the record, but the total amount of the vouchers issued to contractors is shown to have been $420,192.01 and the total amount of all vouchers issued in connection with the improvement to have been $465,354.71. It is admitted that there was collected from the assessment made for this improvement $580,599.58, and it is claimed that there was disbursed $580,569.02, and that there are still outstanding bonds to the amount of $25,429.40 out of a total bond issue of $394,200.

The appellant introduced the ordinance declaring the existence of a deficiency of $37,857.15, and the assessment roll, and no other evidence. The objectors, having shown the amount disbursed and collected, as above set forth, the total amount of the bond issue and the amount claimed to be still outstanding, showed from the books in the office of the board of local improvements the total amount of vouch-

ers issued, $465,354.71, and that there had been collected to April 30, 1901, on account of this improvement, $419,-341.90. The interest to that date on all the vouchers issued to contractors from the time of their issue could not have exceeded $112,792.69, so that the total amount then chargeable on account of the assessment was not more than $578,147.40, and the amount remaining after crediting the amount collected was not more than $158,805.50. One-fourth of the bond issue, $98,550, was not yet due, so that the deficit did not exceed $60,255.50. There was afterward collected the sum of $161,257.68. One year's interest on the $158,805.50 remaining due on April 30, 1901, is $9528.33, so that, after crediting the amount collected subsequent to that date, there still remains a balance of $7016.15. There is, however, included in the amount of vouchers issued, $12,635.58 for abatements. No attempt had been made to show any authority for the issue of abatement vouchers or for the abatement of a special assessment against property which has been regularly confirmed, and we know of none. This amount should therefore be deducted from the cost of the improvement.

If the sum of $161,257.68 collected after April 30, 1901, was not collected within the year, the interest on the amount of the vouchers still unpaid would be greater. But in the calculations made we have assumed, what is not to be supposed, that the total amount of the assessment collected to April 30, 1901, was collected on that day and that all vouchers bore interest to that time. The amounts collected were, of course, received from time to time, and as they were received by the city the interest ceased upon the vouchers to the payment of which the sums so received were legally applicable. (*Village of Wilmette v. People,* 214 Ill. 107.) For this reason the deficit existing on April 30, 1901, must have been many thousands of dollars less than the $60,-255.50 indicated above. The evidence produced by the appellees overcame the *prima facie* case of the petitioner.

While a portion of the bonds remain unpaid, it cannot be said on this record that there is any deficiency or insufficiency in the assessment.

The judgment of the county court is affirmed.

*Judgment affirmed.*